IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RICARDO B. MEDINA,

        Plaintiff,

      vs.                      NO. CIV 04-1236 LCS/KBM

DR. FRANCIS J. HARVEY,
Secretary, DEPARTMENT OF
THE ARMY,

        Defendant.

### DEFENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

COMES NOW Defendant, Francis J. Harvey, Secretary of the Army, by and through Assistant United States Attorney Phyllis A. Dow, and Special Assistant United States Attorney Louise A. Schmidt and hereby submits Defendant's Proposed Findings of Fact and Conclusions of Law.

### I.  INCORPORATION

Defendant incorporates the Stipulated Factual Contentions in the Pretrial Order (Doc. No. 84) as if fully set forth herein.

### II. DEFENDANT'S PROPOSED FINDINGS OF FACT

1.  Plaintiff has been employed since 1989 as a Supervisor Engineer, GS-0801-14, in the Systems Test and Assessment Directorate (STAD) at the United States Army's White Sands Missile Range (WSMR) in New Mexico.

2.  WSMR is a tri-service (Army, Navy, Air Force) facility for test, evaluation, research, and assessment of military systems and commercial products.  The Army, however, is charged

with operating the WSMR installation, and most employees, including Plaintiff, are employed by the Army.

3.   The STAD, within the WSMR Test Center, is responsible for test design, execution, and data analysis for numerous weapon programs.

4.   The STAD manages several launch complexes, a nuclear reactor, and operates a group of laboratories used in testing processes.

5.   The WSMR Test Center operates on a reimbursable basis and must seek out and maintain a customer base for its services.

6.   Plaintiff's date of birth is January 27, 1946.

7.   Since 1997, Plaintiff has served as Chief, Metrics Engineering Test Branch (also known as the Test Measurements Branch), within the Applied Sciences Division (ASD), in the STAD.

8.   Richard Hays served as the Chief of ASD, a GS-15 supervisory engineer position, and Plaintiff's first-line supervisor, until Mr. Hays' retirement in 2003.

9.   John Jensen, Director of the STAD, which is also a GS-15 supervisory engineer position, served as Plaintiff's second-line supervisor and Mr. Hays' first-line supervisor.

10.   Upon learning of Mr. Hays' decision to retire from federal service, Mr. Jensen generated a "Request for Personnel Action" to recruit to fill the position of Chief, ASD, Supervisory General Engineer, GS-0801-15.

11.   Mr. Jensen was the selecting official for the recruitment action to fill the position of Chief, ASD.

2

12.  Beginning around 1998,  Mr. Jensen and other managers at WSMR began discussing the need to plan ahead for an expected retirement bubble at the installation.  Due to post-Cold War downsizing in the early 1990s, recruitment for new employees had diminished.

13.  In the early 2000's, the average age of WSMR civilian employees was approximately 49 years old.

14.  Efforts were made to increase recruitment of new employees in "co-op" and intern positions as a source of potential replacements for the eventual retirement of the aging WSMR work force.

15.  Plaintiff, as a supervisor and Branch Chief, participated in this recruitment effort.  He  described his achievements in hiring co-ops and interns in his Senior System Civilian Evaluation Report forms during the years 1998 through 2003.

16.  In 1999, the Army's regional West Civilian Personnel Operations Center (WCPOC), which serviced WSMR for recruitment and placement, implemented the "West Region Automated Recruitment and Placement Plan" that designated RESUMIX as "the single method to expedite the referral of qualified employees for internal recruitment and placement."

17.  RESUMIX is a suite of software components which operate in place of manual rating and ranking of candidates based on "knowledges, skills, and abilities."

18.  The elimination of manual rating and ranking rendered

3

inoperative various provisions in the 1984 WSMR Merit Promotion Plan (MPP).

19.  Specifically, Paragraph 335-B-7, "Determining Minimally Eligible and Highly Qualified Candidates" was operationally superceded when RESUMIX was implemented.

20.  RESUMIX produces for the selecting official a "web-based referral list" of the best-qualified applicants for a vacant position, along with printouts of the candidates' electronic applications.

21.  In 2003, RESUMIX operated as an "inventory-based" system.  Interested employees entered their electronic applications/resumes, along with their job interest criteria-- such as series, grade and geographic preferences--into the RESUMIX database.  When positions opened matching a candidate's stated interest criteria, the system would automatically retrieve and process the individual's application.

22.  Employees at WSMR, including Plaintiff, were made aware that "to be considered for internal competitive placement, each applicant must maintain an active resume" in the RESUMIX system.

23.  WSMR employees were responsible for updating, their resumes in the RESUMIX system and application database.

24.  In April 2003, "Web-Based Resumix Referral Guidelines for STA" were disseminated via email to all supervisors within the WSMR organization, including Plaintiff, that covered, in part, processes to be used upon receipt of a "web-based referral list."

4

25.  The Guidelines indicated that a "panel to review, interview, and provide recommendations to selecting official" would be required for this GS-15 selection.  However, there was no restriction on the participation of the selecting official on this panel.

26.  The Guidelines also required use of a "matrix to score candidates based on knowledge and skills required of the position."

27.  On or about May 16, 2003, Plaintiff was referred, along with Richard Martinez, the eventual selectee, and nine other candidate names, to the selecting official, Mr. Jensen, for consideration for promotion to the position of Supervisory General Engineer, GS-0801-15.

28.  Mr. Jensen recruited two other Test Center employees, also holding positions at the grade of GS-15, to serve with him on the  panel to assess the candidates and recommend a selectee.

29.  The two other panel members were Vicki Reynolds and Mario Correa.

30.  The ASD Chief position is a leadership position, requiring the ability to be able to do briefings and conduct meetings.

31.  An important responsibility of the ASD Chief is to bring in business for the Test Center laboratories.

32.  At the time of the recruitment at issue, Plaintiff had not recently updated his RESUMIX application to include his temporary promotion to the vacant ASD Chief position subsequent

to Mr. Hays' retirement.

33.   The three panel members first individually reviewed each candidate's application.   They evaluated each RESUMIX against the following job-related criteria:

Knowledge of testing, evaluation and materiel acquisition process

Ability to manage a technical organization

Knowledge of environmental and special effects testing, to include climatic dynamics, warhead/explosive effects, and instrumentation/data collection systems and ammunition management

Ability to develop long range plans and goals

Ability to communicate orally and in writing

34.   The panel members individually assigned scores ranging from zero to nine points for each factor, with zero indicating no evidence of experience and nine indicating a high level of experience.

35.   The highest score a candidate could achieve in the RESUMIX evaluation was 45 points from each panel member.

36.   In an effort to be as objective as possible in this phase of the selection process, the panel members took each resume at face value and attempted to avoid relying on personal knowledge of a candidate.

37.   After assigning scores individually, the panel members then met to review and reconcile any scores with a variation of more than 6 points.

38.   The final scores were recorded on matrixes and averaged.

39.  Plaintiff received the following scores from the panel members:

| Panel member | Factor No. 1 | Factor No. 2 | Factor No. 3 | Factor No. 4 | Factor No. 5 | Totals |
|---|---|---|---|---|---|---|
| Jensen | 6 | 9 | 6 | 3 | 6 | 30 |
| Reynolds | 6 | 9 | 6 | 9 | 6 | 33 |
| Correa | 6 | 9 | 9 | 6 | 9 | 39 |
| | | | | Averaged | Total | **34** |

40.  The selectee, Ricardo Martinez, received the following scores:

| Panel member | Factor No. 1 | Factor No. 2 | Factor No. 3 | Factor No. 4 | Factor No. 5 | Totals |
|---|---|---|---|---|---|---|
| Jensen | 9 | 9 | 6 | 6 | 6 | 36 |
| Reynolds | 9 | 9 | 6 | 6 | 9 | 39 |
| Correa | 6 | 6 | 9 | 6 | 6 | 33 |
| | | | | Averaged | Total | **36** |

41.  After evaluating and scoring the resumes, the panel members then conducted interviews of all of the candidates on the referral list who still wished to be considered for the vacancy, including Plaintiff.

42.  Prior to the interviews, Mr. Jensen formulated four questions and submitted them to Ms. Reynolds and Mr. Correa for their review, but they offered no changes.

43.  The panel members posed the following four questions to all 10 interviewees:

> Discuss your background and ability to lead ASD [Applied Sciences Division]  technical and professional

7

personnel.

Given the projection for total WSMR business is lower,
how would you market the capabilities of this division?

What visions or capabilities or attributes do you bring
to the table that will best align this division to the
WSMR of the future?

What experience or qualification should we know about,
that was not in your resume?

44.   The panel members individually scored each candidate's
reply on a scale from 0 to 10 points, with 10 as the best score;
thus, the maximum score for this phase of the final selection
process was 40 points per panel member.

45.   Plaintiff received the following scores on his
responses to the interview questions:

| Panel Member | Question No. 1 | Question No. 2 | Question No. 3 | Question No. 4 | Totals |
|---|---|---|---|---|---|
| Jensen | 9 | 8 | 7 | 4 | 28 |
| Reynolds | 9 | 8 | 7 | 4 | 28 |
| Correa | 8 | 8 | 7 | 4 | 27 |
| | | | Averaged | Total | 27.67 |

46.   The panel scored Mr. Martinez as follows:

| Panel Member | Question No. 1 | Question No. 2 | Question No. 3 | Question No. 4 | Totals |
|---|---|---|---|---|---|
| Jensen | 9 | 6 | 7 | 10 | 34 |
| Reynolds | 9 | 7 | 5 | 10 | 31 |
| Correa | 9 | 8 | 6 | 10 | 33 |
| | | | Averaged | Total | 32.67 |

47.   Tabulation of the resume and interview scores revealed

8

that candidate Richard Martinez received the highest average total of 68.67 points.

48.  Richard Martinez' date of birth is February 10, 1955.

49.  Greg Vickers received the next highest score.

50.  Plaintiff had the third highest score of 61.67 points.

51.  The three panel members all concurred that Mr. Martinez should be offered the position.

52.  On July 14, 2003, Mr. Jensen decided to select Mr. Martinez and listed Mr. Vickers as the first alternate selectee and Plaintiff as a second alternate selectee.

53.  At the time of his selection for the ASD Chief position, Mr. Martinez was 48 years old and had been serving for three years as the Chief, Tactical Missile Branch, located within a different division of the STAD.

54.  Mr. Martinez had been employed at WSMR as an engineer since 1990 in a variety of positions.  In addition, in 1992, he had accepted a one-year developmental assignment at the Ballistic Missile Defense Organization in the Pentagon.

55.  Local WSMR practice required higher management approval of Mr. Jensen's selection for this Division Chief position. Charles R. Garcia, Test Center Executive Director, and Paul Arthur, Acting Technical Director, were the designated approving officials.

56.  When informed of the panel's recommendation of Mr. Martinez as the selectee, Mr. Arthur requested that Mr. Jensen consult with Mr.  Martinez' supervisor, Joe Chavez, as to the

selectee's performance as a branch chief.

57.   After Mr. Jensen reported to Mr. Arthur that Mr. Chavez had approved of the choice of Mr. Martinez, Mr. Arthur approved his selection.

58.   Mr. Garcia also approved the selection of Mr. Martinez.

59.   On July 15, 2003, Mr. Jensen completed the "Referral List Candidate Selection" form, identifying Mr. Martinez as the selectee, Gregory Vickers as the first alternate, and Plaintiff as the second alternate.

60.   Mr. Martinez accepted the position and was promoted to GS-15 effective in July 2003.

61.   On August 18, 2003, Plaintiff initiated an informal Equal Employment Opportunity (EEO) complaint, alleging that he was a victim of age discrimination when not selected for promotion to the ASD Chief position.

62.   After the counseling process, Plaintiff filed a formal complaint on October 1, 2003, in which he again limited his complaint to not being selected for the ASD Chief position.

63.   High-ranking government officials at WSMR did not repeatedly state that WSMR need "younger blood".

64.   High-ranking government officials at WSMR have not repeatedly stated that WSMR needs to "get rid of its aging workforce".

65.   Defendant's employees have not made numerous ageist comments which prove an age-based animus toward Defendant's older employees.

10

66.   There is no direct evidence of age discrimination on the part of Defendant and/or his employees.

67.   There is no evidence of age discrimination on the part of Defendant and/or his employees.

68.   Defendant and/or his employees did not discriminate against Plaintiff on the basis of his age.

### III.   CONCLUSIONS OF LAW

#### Age Discrimination in Employment Act (ADEA)

1.   Federal employees are protected from age discrimination by the provisions of 29 U.S.C. § 633a, which states that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . shall be made free from any discrimination based on age."

2.   When a plaintiff alleges disparate treatment due to age, "liability depends on whether the protected trait actually motivated the employer's decision."  Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993).  A disparate treatment claim cannot succeed unless the plaintiff's age "actually played a role in [the employer's decision-making] process] and had a determinative influence on the outcome."  Id.

3.   In the absence of direct evidence of intentional discrimination, ADEA claims are analyzed under the burden-shifting requirements of McDonnell Douglas Corp v. Green, 411 U.S. 792 (1973).  See Garrett v. Hewlett Packard Co., 305 F.3d 1210, 1216 (10th Cir. 2002).  A plaintiff alleging a failure-to-promote claim under the ADEA must initially establish a *prima*

*facie* case demonstrating:  (1) he was a member of a protected class [at least age 40]; (2) he applied for and was qualified for the position; (3) despite being qualified he was rejected; and (4) after he was rejected, the position was filled by someone outside the protected class.  MacKenzie v. Denver, 414 F.3d 1266, 1277-78 (10th Cir. 2005) (citing Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1226 (10th Cir. 2000)).

4.  If the plaintiff establishes a prima facie case of age discrimination, the defendant is required to articulate a legitimate, nondiscriminatory action for its employment action.  Garrett, 305 F.3d at 1216.  If the defendant meets that burden of production by stating reasons that are not facially prohibited by the ADEA, the burden then shifts back to the plaintiff to proffer evidence demonstrating the Defendant's reason is pretextual.  Id.

5.  To establish pretext, Plaintiff must show either that the employment decision was more likely motivated by Plaintiff's age, or that Defendant's proffered explanations for its decisions are unworthy of credence.  Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1167 (10th Cir. 2000).  Plaintiff may accomplish this by offering evidence of "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'"  Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (quoting Olson v. Gen. Elec. Astrospace, 101 F.3d 947, 951-52 (3d Cir. 1996)).

12

6.   In cases alleging discriminatory failure to select or
promote, an employer "has discretion to choose among equally
qualified candidates, provided the decision is not based upon
unlawful criteria." Texas Department of Community Affairs v.
Burdine, 450 U.S. 248, 259 (1981).  Unless the disparity in
employee's qualifications are obvious, a court should be
reluctant to substitute its view for "those of the individuals
charged with the evaluation duty by virtue of their own years of
experience and expertise in the field in question." Mackenzie,
414 F.3d at 1278 (citing Odom v. Frank, 3 F.3d 839, 847 (5th Cir.
1993)).

7.   Plaintiff has attempted to interject a "pattern and
practice" claim of age discrimination into his individual
complaint of nonselection for the position of Chief, ASD.
Plaintiff failed to administratively exhaust such a claim.

8.   Furthermore, even if he had exhausted such a claim
administratively, the Tenth Circuit only recognizes "pattern and
practice" claims of systematic discrimination in class
complaints. Thiessen v. Gen. Elec. Capital Corp., 267 F. 3d 1095
(10th Cir. 2001).  Therefore, Plaintiff's allegation of
systematic age discrimination at WSMR is dismissed as a claim.

9.   Plaintiff has also attempted to raise a "hostile
environment" claim based on age, which he likewise failed to
administratively exhaust.  This claim is dismissed.

10.  Even if Plaintiff establishes a prima facie case of an
ADEA violation, Defendant has demonstrated that the selection of

Mr. Martinez was unrelated to Plaintiff's age.

11. The selecting official, Mr. Jensen, could have selected from any of the candidates listed on the RESUMIX web-based referral list, in that they were all considered "best-qualified" under the terms of the RESUMIX system.

12. Jensen recruited two other long-term WSMR employees, Ms. Reynolds and Mr. Correa, to assist him in differentiating among this slate of applicants to select the best person for this particular division chief job.

13. They used a system of scoring the applicants' resumes against specific job-related criteria coupled with a structured interview process. None of the criteria or the interview questions had any connection to the candidates' chronological ages. The applicant with the highest score at the end of this process was offered the position. That candidate was Mr. Martinez.

14. Mr. Jensen summarized his reasons for selecting Martinez on the "Referral List Candidate Selection" form he returned to the WCPOC:

> "Mr. Martinez is the best qualified candidate based upon knowledge of testing, evaluation, & Material (sic) Acquisition; ability to manage a technical organization; knowledge of environmental and special effects testing; ability to develop long range plans and goals; ability to communicate orally and in writing; and his superior responses to interview questions.

None of these reasons are facially prohibited by the ADEA. Garrett, 305 F.3d at 1216. Thus, Defendant Harvey met his burden of production as to the Army's legitimate, nondiscriminatory

14

reasons for the selection of Mr. Martinez over the other
candidates, including Plaintiff.

15.  Plaintiff has not proven that Defendant's reasons for
selecting Mr. Martinez were a pretext for prohibited age
discrimination.

16.  In a nonselection case, pretext can be inferred "when
the facts assure us that the plaintiff is better qualified than
the other candidates for the position." Jones v. Barnhart, 349
F.3d 1260, 1267-68 (10th Cir. 2003).  Although "courts view with
skepticism subjective evaluation methods," Garrett, 305 F.3d at
1218, their "role . . . is not to act as a super personnel
department that second guesses employers' business judgments,"
and courts "typically infer pretext in these contexts only when
the criteria on which the employers ultimately rely are entirely
subjective in nature." Jones, 349 F.3d at 1267-68 (quotations
omitted).  Furthermore, pretext cannot be established simply by
identifying minor differences between Plaintiff's qualifications
and those of the successful applicant.  Bullington v. United
Airlines, 186 F.3d 1301 (10th Cir. 1999.  Nor can mere seniority
support a finding of superior qualifications.  Durham v. Xerox
Corp., 18 F.3d 836 (10th Cir. 1994)).

17.  Plaintiff has not met his burden of proof as to pretext
because he does not even contend that he was the most qualified
candidate for the ASD Chief position.  He has testified that both
he and Andrus Garay were better qualified than Mr. Martinez and
states that he would not have complained if Mr. Garay had been

15

selected.

18.   Mr. Jensen's participation on the selection panel did not violate the WSMR Merit Promotion Plan because the provision in issue, Paragraph 335-B-7(b)(5), was operationally superceded by the implementation of the RESUMIX automated recruitment and placement plan in 1998.  Thus, Plaintiff has failed to prove this allegation of pretext.

19.   In support of his ageism claim, Plaintiff also contends that Mr. Jensen has made statements out of Plaintiff's presence to the effect that WSMR needed to recruit "young blood."  He contends these statements constitute direct evidence that age animus motivated Mr. Martinez' selection.  However, the witness testimony does not support that Mr. Jensen ever expressed a concern about selecting retirement-eligible individuals for promotion to senior level positions, such as the one in issue.  Rather, Jensen expressed his concern for the need to "build the bench, or build a replacement for the natural aging work force" by bringing in co-ops and interns for future development into managerial positions.

20.   Plaintiff himself, as a branch chief, touted his own efforts in this regard in the documents he prepared to support his annual performance ratings between 1998 and 2003.

21.   Plaintiff has not proven his claim of age discrimination.

22.   Defendant did not discriminate against Plaintiff on the basis of his age.

16

23.   Defendant's articulated reasons for the actions taken against Plaintiff were not pretextual.

24.   Plaintiff is not entitled to back pay and benefits.

25.   Plaintiff is not entitled to attorney's fees and costs.

26.   Plaintiff is not entitled to prejudgment and post-judgment interest.

Respectfully submitted,

DAVID C. IGLESIAS
United States Attorney

*Filed electronically 1/5/05*
PHYLLIS A. DOW
Assistant U.S. Attorney
P. O. Box 607
Albuquerque,  NM 87103
(505) 346-7274
        And
Louise A. Schmidt, Esq.
Special Assistant U.S. Attorney
U.S. Army Litigation Division
901 N. Stuart Street, Suite 700
Arlington, Virginia 22203-1837
(703) 696-1607

I HEREBY CERTIFY that on January 5, 2006, a true copy of the foregoing pleading was sent via First Class Mail to opposing counsel as follows:  Rebecca L. Fisher, Rebecca L. Fisher & Associates, P.O. Box 417, McGregor, TX 76657, Michael Schwarz, P.O. Box 1656, Santa Fe, NM 87504-1656, and Joleen K. Youngers, Almanzar & Youngers, P.A., P.O. Box 7256, Las Cruces, New Mexico 88006.

                    /s/
PHYLLIS A. DOW
Assistant U.S. Attorney

N:\PDow\Medina\Findings and Conclusions.wpd