IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**RICARDO MEDINA,**

      **Plaintiff,**

vs.                                        **No. CIV 04-1236 LCS/KBM**

**DR. FRANCIS C. HARVEY,
SECRETARY, DEPARTMENT OF
THE ARMY,**

      **Defendant.**

## THE COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Findings of Fact

1. Plaintiff's date of birth is January 27, 1946. As such, Plaintiff was at all times pertinent to this action older than 40 years of age and therefore, a member of the protected class pursuant to the Age Discrimination in Employment Act ("ADEA"). *See* 29 U.S.C. §§ 621-634.

2. Plaintiff has been employed since 1989 as a Supervisory Engineer, GS-0801-14, in the Systems Test and Assessment Directorate (STAD) at the United States Army's White Sands Missile Range (WSMR) in New Mexico.

3. WSMR is a tri-service (Army, Navy, Air Force) facility for test, evaluation, research, and assessment of military systems and commercial products. The Army, however, is charged with operating the WSMR installation, and most employees, including Plaintiff, are employed by the Army.

4. The STAD, within the WSMR Test Center, is responsible for test design, execution, and

      data analysis for numerous weapon programs.  The STAD manages several launch complexes, a nuclear reactor, and operates a group of laboratories used in testing processes.

5. The WSMR Test Center operates on a reimbursable basis and must seek out and maintain a customer base for its services.  As outlined by Richard Hays during his trial testimony, each division is expected to be self-sustaining, requiring division leaders to actively recruit new business.

6. Since 1997, Plaintiff has served as Chief, Metrics Engineering Test Branch (also known as the Test Measurements Branch), within the Applied Sciences Division (ASD) in the STAD.

7. Beginning around 1998, John Jensen, then-director of the STAD, and other managers at WSMR began discussing the need to plan ahead for an expected retirement bubble at the installation.  Due to post-Cold War downsizing in the early 1990's, recruitment for new employees had diminished and it was expected that a large number of senior management officials would be eligible for retirement during a short period of time.

8. In the early 2000's WSMR's civilian workforce was aging.  Mr. Jensen had concerns about the aging workforce and made numerous comments about the need for "younger blood" and for "building the bench" which meant hiring and promoting younger individuals.

9. Efforts were made to increase recruitment of new employees in "co-op" and intern positions as a source of potential replacements for the eventual retirement of the aging WSMR workforce.  Plaintiff, as supervisor and Branch Chief, participated in this recruitment effort.  He described his achievements in hiring co-ops and interns in his

Senior System Civilian Evaluation Report forms during the years 1998 through 2003 and testified at trial about his participation in various recruitment efforts.

10. In 1999, the Army's regional West Civilian Personnel Operations Center (WCPOC), which serviced WSMR for recruitment and placement, implemented the "West Region Automated Recruitment and Placement Plan" that designated RESUMIX as "the single method to expedite the referral of qualified employees for internal recruitment and placement."

11. RESUMIX is a suite of software components which operates in place of manual rating and ranking of candidates based on "knowledge, skills, and abilities" ("KSAs"). In addition, WCPOC personnel further manually rate and rank the candidates.

12. In 2003, RESUMIX operated as an "inventory-based" system. Interested employees entered their electronic applications/resumes, along with their job interest criteria--such as series, grade, and geographic preferences--into the RESUMIX database. When positions opened matching a candidate's stated interest criteria, the system would automatically retrieve and process the individual's application.

13. Employees at WSMR, including Plaintiff, were made aware that "to be considered for internal competitive placement, each applicant must maintain an active resume" in the RESUMIX system. WSMR employees were responsible for updating their resumes in the RESUMIX system and application database.

14. Since the RESUMIX system operated through a "word search" software program, a candidate with knowledge of the system could influence RESUMIX scoring. Once RESUMIX produced a list of fully qualified persons and the recommendation panel became involved, all candidates began at ground zero, without regard to RESUMIX

scoring. Nevertheless, reaching the "qualified status" on RESUMIX can be influenced.

15. RESUMIX produces for the selecting official a "web-based referral list" of fully qualified applicants for a vacant position, along with printouts of the candidates' electronic applications.

16. Richard Hays served as the Chief of ASD, a GS-15 supervisory engineer position, and was Plaintiff's first-line supervisor, until Mr. Hays' retirement in 2003. At that time, Mr. Jensen served as Plaintiff's second-line supervisor and Mr. Hays' first-line supervisor.

17. Upon learning of Mr. Hays' decision to retire from federal service, Mr. Jensen generated a "Request for Personnel Action" to recruit for the position of Chief, ASD Supervisory General Engineer, GS-0801-15.

18. The ASD Chief position is a leadership position, requiring the ability to do briefings and conduct meetings. An important responsibility of the ASD Chief is to bring in business for the Test Center laboratories.

19. On or about May 19, 2003, Plaintiff was referred, along with ten other candidates, to the selecting official for consideration for promotion to Supervisory General Engineer, GS-0801-15, in the position of Chief, Applied Sciences Division, Systems Test and Assessment Directorate, White Sands Missile Range Test Center ("Test Center").

20. The selecting official for this action was John Jensen, GS-15, then-Director of the Systems Test and Assessment Directorate.

21. Serving both as a selecting official and as a member of the selection panel is prohibited unless that official is the only person in the work force who meets the rater qualification requirements. [Exhibit 21, p. 0022] There is no evidence that Mr. Jensen met this exception.

22. Nothing in WCPOC's automated recruitment and placement plan [Exhibit 15] specifically voids or overrules any portion of the Army's Merit Promotion Plan. [Exhibit 21] When read together, Exhibits 15 and 21 indicate that the selection official is precluded from serving on the review panel. [Exhibit 21, p. 0022 § (b)(8)] Furthermore, Exhibit 12 states "[a]ll recruit/fill positions will require developing a matrix to score candidates based on knowledge and skills required of the position. The matrix will be signed by all panel members and given to Ms. Mears to be filed with the complete selection package." The clear implication of these sections is that the selecting official will not be a member of the panel and the court so finds. [Exhibit 12, p. 131]

23. Mr. Jensen recruited two other Test Center employees, also holding positions in the grade of GS-15, to serve with him on the panel to assess the candidates and recommend a selectee. These employees were Vicki Reynolds and Mario Correa. Mr. Jensen wanted to be on the panel so he could assure the selection of a younger individual.

24. At the time of the recruitment at issue, Plaintiff had not updated his RESUMIX application to include his temporary promotion to the vacant ASD Chief position subsequent to Mr. Hays' retirement. However, Mr. Jensen knew Mr. Medina was serving in that position during the recruitment period.

25. The panel members individually reviewed and scored the candidates' written applications against five criteria:

> Knowledge of testing, evaluation, and materiel acquisition process
>
> Ability to manage a technical organization
>
> Knowledge of environmental and special effects testing, to include climatic dynamics, warhead/explosive effects, and instrumentation/data collection systems and ammunition management

        Ability to develop long-range plans and goals

        Ability to communicate orally and in writing

26. The panel members individually assigned scores ranging from zero to nine points for each criterion. A score of zero indicated no evidence of experience, whereas a score of nine indicated a high level of experience.

27. The highest score a candidate could achieve in the RESUMIX evaluation was 45 points from each panel member.

28. After assigning scores individually, the panel members met as a group to review and reconcile any scores for a candidate with a variation of six points or more.

29. The final scores were recorded on matrices and averaged.

30. Plaintiff received an averaged total of 34 points on his application out of a maximum of 45 points. The eventual selectee, Richard Martinez, received an averaged score of 36 points.

31. After reviewing the candidates' resumes, the same three-member panel conducted interviews of all the candidates who wished to be considered for the position, including Plaintiff.

32. The panel asked the same four questions of all the candidates interviewed.

33. Mr. Jensen formulated these four questions and submitted them to the panel members for review. Because the questions were subjective, they could be scored in any way the panel members wished. It was therefore possible for the panel to select the person the panel wanted, notwithstanding an "objective" appearance.

34. The questions posed were:

    1. Discuss your background and ability to lead ASD technical and

        professional personnel.

2. Given the projection for total WSMR business is lower, how would you market the capabilities of this division?

3. What visions or capabilities or attributes do you bring to the table that will best align this division to the WSMR of the future?

4. What experience or qualification should we know about, that was not in your resume?

35. The successful candidate and Plaintiff received very close scores on these questions, except on question #4.

36. Question #4 and the manner in which it was scored, as outlined during the testimony of Vicki Reynolds, greatly enhanced the possibility of subjectivity in the selection process.

37. The panel members did not, as required by 5 C.F.R. § 335.103, inspect or otherwise consider the candidates' past performance evaluations.

38. Plaintiff was qualified for the position of Supervisory General Engineer, GS-0801-15 in the Systems Test and Assessment Directorate, Applied Sciences Division.

39. Plaintiff was not selected for the position of Supervisory General Engineer, GS-0801-15 in the Systems Test and Assessment Directorate, Applied Sciences Division.

40. The candidate selected for the position in the Systems Test and Assessment Directorate, Applied Sciences Division was Richard Martinez.

41. Richard Martinez's date of birth is February 10, 1955.

42. Richard Martinez was significantly younger than Plaintiff for purposes of the ADEA.

43. Greg Vickers was selected as the first alternate, receiving the second-highest score in the selection process.

44. Greg Vickers's date of birth is April 17, 1963.

45. In making its selection from the list of candidates, senior management at WSMR did not act with a black heart or a degree of mendacity. At the same time, management made comments demonstrating that age did play a role in the Defendant's decisionmaking process and in the selection outcome.

46. Mr. Jensen informed Mr. Hays that Mr. Martinez might be filling his position before the selection process had been concluded.

47. On at least one occasion, when acting as an approving official, Mr. Jensen had, on being presented with a personnel selection, instructed Pat Mears to inform the selecting official that the candidate was not the individual he wanted to be selected for a vacant position.

48. Mr. Jensen had on prior occasions either changed scores or selection criteria or had unilaterally required a point differential that was not set forth in the manual outlining job selection procedures in order to obtain a desired result.

49. Mr. Jensen coached Greg Vickers, a younger individual, prior to an interview regarding the answers the panel members were seeking to elicit from candidates.

50. Paul Arthur, the approving official in this case, expressed concerns to Mr. Jensen about the selection of Mr. Martinez as ASD Chief. Mr. Jensen did not follow up on these concerns with Mr. Martinez's then-supervisor, Mr. Chavez. [Exhibit 31]

51. When a selecting official known to want to "build the bench" also serves on the selection panel, human nature, consciously or unconsciously, will skew the results to favor youthful candidates. This fact casts doubt on WSMR's proffered legitimate business reason and the court finds WSMR's legitimate business reason for promoting Mr. Martinez was a pretext for age discrimination.

52. The fact that both Richard Martinez and Greg Vickers, the top choices for promotion, were younger individuals is evidence of pretext and leads this Court to find that this selection was motivated by discriminatory animus.

53. A promotion system that fails to seek the opinions of supervisors, an employee's performance records, or an employee's attendance record is suspect and leads me to find that WSMR's proffered legitimate business reason was merely a pretext for discrimination.

## Conclusions of Law

1. In order to prevail in a failure-to-promote claim under the ADEA, Plaintiff first had the burden of establishing a prima facie case of discrimination by showing that, at the time of the adverse employment action: 1) he was a member of the protected class, 2) he applied for and was qualified for the position, 3) he did not receive the promotion for which he was qualified, and 4) the individual eventually promoted was significantly younger than Plaintiff. *MacKenzie v. City and Cty. of Denver*, 414 F.3d 1266, 1278 (10th Cir. 2005). Plaintiff presented sufficient evidence to establish a prima facie case.

2. Once Plaintiff established a prima facie case of discrimination, it was Defendant's burden to articulate a "legitimate business reason" for the challenged employment action. *Miller v. Eby Realty Group, LLC,* 396 F.3d 1105, 1111 (10th Cir. 2005) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). Defendant met its burden by showing that the selected individual was qualified for the position.

3. After Defendant met its burden, Plaintiff then had the burden to show that the Defendant intentionally discriminated against him. *Reeves*, 530 U.S. 133, 142-43 (2000). To satisfy this burden, Plaintiff proved "by a preponderance of the evidence that the legitimate

business reasons offered by the defendant were not its true reasons, but a pretext for discrimination." *Id.* at 143.  In considering the evidence, the Court did not "sit as a super-personnel department" to second-guess the selection of Mr. Martinez over Mr. Medina. *Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 813-14 (10th Cir. 2000).

4. "A plaintiff can show pretext by revealing 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate business reasons for its action [such] that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reason.'" *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)).  As discussed in the findings of fact, Plaintiff's evidence was sufficient to show pretext: 1) Mr. Jensen's service on the selection panel was directly contrary to Merit Promotion Plan Regulation 255-A-8(b)(8), 2) the structure and ranking of interview question #4 allowed the panel to score and select candidates based largely on subjective criteria, 3) in violation of 5 C.F.R. § 335.103, panel members did not consider the candidates' past performance evaluations, 4) Mr. Jensen failed to investigate the concerns of the approving official, Paul Arthur, regarding the selectee, Richard Martinez, 5) Mr. Jensen had previously coached Greg Vickers on desirable interview responses, 6) on several occasions, Mr. Jensen directed others to change scores and/or selection criteria, or alternatively, required a point differential that was not set forth in any manual outlining job selection procedures, and 7) Mr. Jensen made repeated age-related comments which, while not necessarily malicious, did demonstrate that age "actually played a role in the defendant's decisionmaking process and had a determinative influence on the outcome[.]" *Stone v.*

*Autoliv ASP, Inc.*, 210 F.3d 1132, 1140 (10th Cir. 2000).  While any single piece of evidence presented may not be enough to demonstrate pretext, the evidence taken as a whole is sufficient to show that Plaintiff met his burden of proving illegal age discrimination.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**